UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

JOEL D. LUCOFF,

          Plaintiff,

                             Case No. 18-CV-60743- Gayles/Seltzer

vs.

NAVIENT SOLUTIONS, LLC and
STUDENT ASSISTANCE
CORPORATION,

          Defendants.

_____ /

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants, NAVIENT SOLUTIONS, LLC ("**NSL**") and STUDENT ASSISTANCE

CORPORATION ("**SAC**") (collectively, the "Defendants"), by and through undersigned

counsel, and pursuant to Fed. R. Civ. P. 56, hereby responds as follows to Plaintiff's motion for

summary judgment [D.E. 24]:

## I. INTRODUCTION

Defendants also moved for summary judgment and their motion is incorporated herein by

reference. [DE 21].  Defendants are entitled to summary judgment, and Plaintiff's Motion for

Summary Judgment should be denied, based upon the following grounds.

Plaintiff repeatedly acknowledges throughout his Memorandum of Law in support of his

Motion for Summary Judgment that "Defendant can escape liability by pleading and proving the

defense of consent." *See* [DE 27]. Indeed, the undisputed facts unequivocally prove that

Defendants possessed the requisite prior express consent to call Plaintiff.  First, Plaintiff could

not unilaterally revoke his bargained-for consent to receive calls.  Second, to the extent that

Plaintiff *could* revoke his prior consent, Plaintiff nevertheless re-established his express consent, by submitting his cell phone number on NSL's website.

Moreover, Plaintiff has failed to meet his burden of proof on an essential element of his claim, *i.e.*, that Defendants used an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act ("TCPA") to call him, since there is no record evidence showing that the dialing systems used by Defendants have the ability to generate and dial phone numbers in a random or sequential manner.

Lastly, Plaintiff has failed to prove his burden that he is the regular user and carrier of his cellular telephone since the record evidence shows that other individuals shared his cell phone.[1] Based on the arguments below, this Court should deny Plaintiff's Motion for Summary Judgment.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.    Plaintiff Could Not Unilaterally Revoke his Bargained-For Consent to Receive Calls

Plaintiff does not dispute he provided consent to receive ATDS calls from Defendants, but argues that he revoked it on the June 24, 2014 call. (DE 24.) If prior express consent is given as part of a contractual provision, however, it cannot be unilaterally revoked. Here, Plaintiff cannot unilaterally revoke his bargained-for consent because he provided his cellular telephone number to Defendants pursuant to various agreements. First, Plaintiff provided his cellular telephone number ending in 0907 (the "-0907 Number") to Defendants and agreed that Defendants could contact him at that number. (Rule 56.1 Statement, ¶¶ 15-18. Specifically, on July 2, 2012, Plaintiff signed and provided an Automatic (Electronic) Debit Authorization and

---

[1] Defendants further argue that the calls to Plaintiff are not actionable under the TCPA because such calls were made for the purpose of collecting Plaintiff's federal student loan, which are exempt from the TCPA's consent restrictions pursuant to Congress' amendment under the Bipartisan Budget Act of 2015. Defendants' argument is fully briefed in Section III.A. of Defendants' Motion for Summary Judgment and is incorporated herein. (DE 21, pp. 3-5).

forbearance agreement identifying the 0907 Number, which authorized communication with Plaintiff "using automated telephone dialing equipment and/or artificial or pre-recorded voice messages." *See* Rule 56.1 Statement, ¶ 15.  Moreover, Plaintiff provided contractual consent to call him using an ATDS pursuant to the operation of a class action settlement agreement.

As a general matter, "[T]he common law concept of consent" applies to revocations of consent for purposes of the TCPA. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014).  But where "prior express consent" is given "as part of a contractual provision," it cannot "be unilaterally revoked." *Medley v. Dish Network*, 2018 WL 4092120, at \*10 (M.D. Fla. 2018), *appeal docketed,* No. 18-13841 (11th Cir. Sept. 10, 2018); *see Barton v. Credit One Fin. d/b/a Credit One Bank*, 2018 WL 2012876, at \*4 (N.D. Ohio Apr. 30, 2018); *see also Reyes v. Lincoln Auto Fin. Servs.*, 861 F.3d at 56 (2d Cir. 2017) ("[T]he TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent.").

The plaintiff in *Reyes* provided his cell phone number in an application that stated he agreed to receive "contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems" as an express term of his agreement. *Reyes,* 861 F.3d at 53-54. The trial court in *Reyes* granted summary judgment to the defendant, concluding that a party to a legally binding contract cannot unilaterally revoke bargained-for consent under the TCPA. *Id.* The Second Circuit affirmed. *Id.* at 53 ("We hold that . . . the TCPA does not permit a consumer to revoke its consent to be called when that consent forms part of a bargained-for exchange.").

Like the consumer in *Reyes,* Plaintiff provided his cell phone number and consent to be called at that number as an express condition of his request for forbearance of his FFELP Loan

and agreement to initiate electronic debits for his student loan payments. *See* Rule 56.1 Statement, ¶¶ 15-18. Plaintiff contractually granted consent to Defendants, pursuant to the automatic debit and forbearance agreement, and therefore, such contractual consent could not be subsequently unilaterally revoked. Additionally, Defendants possessed Plaintiff's contractual consent as a result of his participation in a prior class action lawsuit against NSL, then known as Sallie Mae, Inc., captioned *Arthur v. Sallie Mae, Inc.*, No. C10-0198 (W.D. Wash.) (hereinafter, the "*Arthur* Settlement"). *See* Rule 56.1 Statement, ¶¶ 34-35.

On September 17, 2012, NSL settled the *Arthur* matter, whose settlement class included all persons to whom, between October 27, 2005 and September 14, 2010, NSL placed a call to his or her cellular telephone. *Id.* By operation of the *Arthur* Settlement, settlement class members were deemed to have consented to receiving automated calls from NSL and its affiliates (such as SAC) going forward "to any phone numbers reflected in [their] records," unless they submitted a revocation request within the prescribed claims administration period. *Id.* Specifically, as consideration, settlement class members who desired not to receive calls could execute and submit a Revocation Request form to the Settlement Administrator, Garden City Group, LLC. *See* Rule 56.1 Statement, ¶¶ 34-35. Here, Plaintiff received individual notice of the *Arthur* settlement by e-mail, and did not opt out or submit a Revocation Request. *Id.*

Therefore, for this additional reason, Defendants possessed Plaintiff's contractual consent to call him using an ATDS or an artificial or prerecorded voice pursuant to the *Arthur* settlement agreement. *See Rodriguez v. Student Assistance Corp.*, Doc. 40, No. 1:17-cv-01577-BMC (E.D.N.Y. Nov. 6, 2017) (holding that Plaintiff, a member of the *Arthur* Settlement, could not pursue TCPA claims against SAC and NSL) ("[P]laintiff received consideration in exchange for her consent. She did not have to accept it. She could have opted out of the settlement

agreement.  She could have executed a Revocation Agreement.  By choosing not to do either, she can no more maintain this action than she could start a new one against Sallie Mae for the conduct that formed the basis of the allegations in the class action."). Thus, because Plaintiff could not unilaterally revoke his bargained-for consent, Plaintiff's motion for summary judgment should be denied.

**B.      Plaintiff Provided his Cellular Telephone Number and Re-established Consent**

Notwithstanding the above, even if Plaintiff could revoke his consent, Plaintiff subsequently re-established his consent prior to receiving the calls at issue. While Plaintiff claims he did not "provide" his cellular telephone number, because the information had been pre-populated on NSL's website, Plaintiff cannot escape the undisputed facts that: (i) he saw his cell number listed in a fillable field on NSL's website; (ii) he could edit or remove such number; and (iii) he elected to proceed anyway by clicking "Submit," and in so doing, submitted his consent to be called at that number. Additionally, Plaintiff does not assert that he attempted to delete the information, even though that information was not required to proceed and could have been easily removed.  Nor does Plaintiff identify that he subsequently attempted to advise NSL or SAC that such provision of consent was unintentional or invalid.

Re-establishment of consent was addressed by the Eleventh Circuit in *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 880-81 (11th Cir. 2016).  In *Lawrence*, the plaintiff conceded that he provided prior express consent when he listed his cell phone number on a loan modification application, however, he claimed he orally revoked consent thereafter.  *Id*. at 879.  The defendant in *Lawrence* argued that plaintiff re-established consent by including his cell phone number in letters sent to defendant after his oral revocation.  *Id*. The Eleventh Circuit found that plaintiff indeed renewed consent by providing his cell phone number again to defendants after the oral revocation, even if plaintiff did not intend to provide consent. *Id*.

5

A person's intent in providing consent is not a consideration when determining whether prior express consent has been given. In *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014), the plaintiff argued that he did not "provide" his number to the creditor because neither he nor his wife personally transferred his cell phone number directly to the debt collector. The Eleventh Circuit, however, rejected plaintiff's argument that a cellular number could only be provided to the creditor through direct delivery. Instead, the court in *Mais* found that the plaintiff's wife made his phone number available to the debt collector by granting the hospital permission to disclose it in connection with billing and payment. *Id.*

Similarly, in *Edelsberg v. Vroom, Inc.,* 2018 U.S. Dist. LEXIS 50420 (S.D. Fla. 2018), this Court held that by listing a telephone number in an online advertisement directing interested buyers to contact him, plaintiff expressly consented to be contacted at that number to facilitate the purchase of the advertised item. *Id.* (citing *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015) ("when a person provides his or her telephone number, calls to that number are permissible because the called party has in essence requested the contact by providing the caller with their telephone number."). This Court found that despite plaintiff's "post hoc representations" that he did not want to be contacted with automated messages, there were no such limitations included in plaintiff's actual advertisement. *Id.* at *22 (citing *Johnson v. Credit Prot. Ass'n*, L.P., 2012 U.S. Dist. LEXIS 165647, *11 (S.D. Fla. 2012) (finding that plaintiff was not entitled to claim he did not provide consent, when plaintiff provided his telephone number in a work order form for cable installation services without an affirmative statement that provision of the cell phone number was for purposes of installation only).

Here, although Plaintiff claims he did not "provide" his number to Defendants because he did not manually input it himself, this cannot circumvent Plaintiff's act of providing

authorization to be called on his cell phone when he clicked "Submit." When Plaintiff accessed his online account, his cell phone number ending in -0907 appeared in the fields for "Contact Information: Cell Phone" and "Contact Information: Work Phone," because Plaintiff had previously provided such telephone number to NSL as his cellular and work telephone numbers at which he could be reached.[2] *See* Ex. "1" Highfield Aff. at ¶ 8. The webpage for the demographics page stated that only the fields marked with asterisks are required fields. *Id.* at ¶ 9. The "Cell Phone" and "Work Phone" fields, however, were not marked with an asterisk, and they were not configured by NSL as required fields for submission. *Id.* at ¶ 10. Although Plaintiff's cell phone number ending in -0907 was pre-populated in the designated fields, Plaintiff had the option to either modify or delete such phone number, as the "Cell Phone" and "Work Phone" fields were not required to be filled out. *Id.* at ¶ 11.

Indeed, Plaintiff admits he saw his cellular number populated on NSL's website, and there is no evidence that he attempted to edit or delete it. (DE 22, Rule 56.1 Statement, ¶ 25); Ex. "5," Plaintiff's Dep. 85:21-86:3. Moreover, Plaintiff does not dispute that he saw the consent language on the website before he clicked "Submit." (DE 30-1, Plaintiff's Dep. at 77:20-78:9.) Despite Plaintiff's strained argument that he did not actually "provide" his cell phone number, the undisputed facts prove that Plaintiff re-established consent by clicking "Submit" to the consent language pertaining to his cell phone number that appeared on his online account.

Moreover, there is no record evidence that Plaintiff informed NSL that he did not want to provide his contact information. On the contrary, Plaintiff admits he knowingly clicked "Submit" to the consent language appearing under the -0907 Number when he visited NSL's website on

---

[2] The demographics page can be presented when a borrower accesses his or her online account and the borrower is asked to confirm or update the contact information in order to ensure that NSL has the most up to date records for the borrower's student loan. *See* Ex. "1," Highfield Aff. ¶ 7.

June 24, 2014. (DE 22, Rule 56.1 Statement, ¶ 24.) The authorization language on NSL's website is similar to a clickwrap agreement, in that it is a manifestation of the borrower's intent to be bound by the information provided. Courts routinely enforce clickwrap agreements where the user indicates actual notice of the terms of use or where the user was required to acknowledge the terms of use before proceeding with further use of the site. *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175-76 (9th Cir. 2014). The consent language contained in NSL's website was prominent, conspicuous, and required Plaintiff's acknowledgement of such, by clicking the "Submit" button prior to proceeding with further use of the site. Indeed, the words "Edit Your Contact Information" are displayed prominently, in bold, at the top of the website screen presented to Plaintiff. (DE 23-1, NSL000070.) And the contents of the entire page concerned providing updates to Plaintiff's contact information – in which none of the requested fields were hidden or minimized. *Id.*

That Plaintiff's phone number was pre-populated on the website, standing alone, does not invalidate Plaintiff's subsequent action of clicking "Submit" and, as such, agreeing to be contacted at that number.  This would be analogous to arguing that a written contract should not be enforceable, because a signatory failed to read it.  This is especially true here, where Plaintiff is a licensed attorney who admittedly has been familiar with the TCPA for approximately ten years, since he practices consumer law and was also a plaintiff in a lawsuit involving a TCPA claim. *See* Ex. "5," Plaintiff's Deposition at 6:4-7, 67:19-21, 68:1-5. As such, there is no question Plaintiff understood the meaning and import of the consent language on NSL's website. Moreover, as a consumer lawyer, Plaintiff knew what actions to take in order to attempt to revoke his consent after the June 24, 2014 telephone call, which he never did.

Ultimately, even if Plaintiff did not *intend* to provide consent, he nevertheless took action to provide his consent to Defendants. *Lawrence*, 666 F.App'x at 879.  There is no dispute that Plaintiff saw his cell number populated on NSL's website when he logged into his account and that he clicked the "Submit" button to the consent language. Therefore, as a matter of law, Plaintiff re-established his consent. Based on the undisputed facts, this Court should find that Plaintiff provided prior express consent to Defendants be called on his cell phone number, and as such, deny Plaintiff's Motion for Summary Judgment.

**C.      Defendants' Dialing Equipment Is Not an ATDS Because It Cannot Store or Produce Numbers to be Called Using a Random or Sequential Number Generator**

Plaintiff has failed to meet his burden that the software used by Defendants to place calls to Plaintiff is an automatic telephone dialing system ("ATDS") as defined by the TCPA. It is undisputed that the software used by Defendants to call Plaintiff did not have the capability to store or produce telephone numbers to be called, using a random or sequential number generator, or to dial such numbers. *See* Defendant's Response to Plaintiff's Statement of Material Facts, ¶¶ 6, 10 & 11; Ex. "1," Highfield Aff. at ¶¶ 14-16; Ex "2," Campbell Aff. at ¶¶ 8-11. The system used by NSL to call Plaintiff during the time period relevant to this action required an external database containing a list of telephone numbers in order to place outbound telephone calls.  *Id.* Without the capacity to generate random or sequential numbers by itself, and dial them, such system is not an ATDS as defined by the TCPA.

The text of the TCPA states that "automatic telephone dialing system" means equipment which has the capacity—"(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1). Thus, equipment does not meet the statutory definition of an ATDS unless it is capable of doing at least three things.  *First*, it must be able to generate random or sequential numbers; otherwise,

obviously, it cannot have the capacity to do anything "using a random or sequential number generator." *Id*. § 227(a)(1)(A). *Second*, it must be able to use that random or sequential number generator to store or produce telephone numbers to be called; that is what it means to have the capacity "to store or produce telephone numbers . . . , using a random or sequential number generator." *Id*. *Third*, it must be able to dial those telephone numbers; the terms of the definition – i.e., to "dial such numbers," *id*. § 227(a)(1)(B) (emphasis added) -- refer back to the "telephone numbers" that were stored or produced "using a random or sequential number generator," id. § 227(a)(1)(A).

The Federal Communications Commission ("FCC") has the authority to promulgate regulations implementing the TCPA. *See ACA Int'l v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018). In 1992, the FCC promulgated regulations that adopted the statutory definition of ATDS without elaboration. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8792 App'x B (1992) (amending 47 C.F.R. § 64.1200) ("1992 Order"). It did state, though, that the TCPA did not apply to debt-collection calls "because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator)." *Id*. at 18873. Indeed, in 1995, the FCC reaffirmed this, stating "debt collection calls are not directed to randomly or sequentially generated telephone numbers, but instead are directed to the specifically programmed contact numbers for debtors," unlike telemarketers, for instance. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12401 (1995) (internal quotes omitted).

However, almost a decade later, in 2003, the FCC promulgated new regulations that expanded the definition of an ATDS, to include equipment that dials numbers from a preprogrammed list, even if unable to generate numbers in a random or sequential manner

("2003 Order").  In 2015, the FCC further expanded the definition to include equipment with the latent or hypothetical capacity to "store or produce telephone numbers to be called, using a random or sequential number generator."  ("2015 Order").  The FCC defined "capacity" based on what a system's potential functionalities" may be after modification.  *See ACA Int'l.*, 885 F.3d at 693.

These expansive interpretations, however, were vacated in *ACA Int'l v. FCC*.  There, the D.C. Circuit Court, whose review of the FCC's Orders is binding nationwide, held that the reasoning behind the FCC's 2003 and 2015 Orders was unreasonable:

> In short, the [FCC's] ruling, in describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decision-making.  The order's lack of clarity about which functions qualify a device as an autodialer compounds the unreasonableness of the Commission's expansive understanding of when a device has the "capacity" to perform the necessary functions.  We must therefore set aside the [FCC's] treatment of those matters.

*Id.* at 703.  This "expansive understanding" necessarily included the prior FCC Orders upon which the 2015 Order expounded and attempted to clarify.  Indeed, the court in *ACA Int'l* noted that the 2015 FCC Order "reaffirmed the conclusion" of the 2003 Order, that "a device can be considered an autodialer even if it has no capacity itself to generate random or sequential numbers." *Id.* at 702-703.  By re-examining its prior Orders, the FCC reopened the issue of what constitutes an ATDS, and led to the DC Circuit Court setting aside both Orders for lack of clarity.  The D.C. Circuit specifically rejected the argument that the 2003 and 2008 orders were not subject to review:

> While the [FCC's] latest ruling purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review.  The agency's prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform.  Petitioners covered their bases by filing petitions for both a declaratory ruling and a rulemaking concerning that issue and related ones.  In response, the [FCC] issued a declaratory ruling that purported to "provid[e] clarification on the definition of 'autodialer,'" and denied the petitions for rulemaking on the issue.  The ruling is thus reviewable on both grounds.

*ACA Int'l*, 885 F.3d at 701 (internal citations omitted). Accordingly, *ACA Int'l* clearly addressed not only the 2015 FCC Order, but also the ambiguity already present in the 2003 Order.

In addition, in the time since the *ACA Int'l* opinion was issued, the Second and Third Circuit Courts of Appeals, and a wave of district courts, have confirmed that the FCC's embellishments to the definition of an ATDS were vacated, and the plain language of the statute alone governs. *See Dominguez v. Yahoo, Inc.*, 2018 U.S. App. LEXIS 17436, at *5 (3d Cir. Jun. 26, 2018); *Pinkus v. Sirius XM Radio, Inc.*, 2018 U.S. Dist. LEXIS 125043 (N.D. Ill. July 26, 2018); *Lord v. Kisling, Nestico & Redick, LLC*, 2018 U.S. Dist. LEXIS 116288 (N.D. Ohio July 12, 2018); *Herrick v. GoDaddy.com LLC*, 2018 U.S. Dist. LEXIS 83744, at *6 (D. Ariz. May 14, 2018); *Marshall v. CBE Grp., Inc.*, 2018 U.S. Dist. LEXIS 55223, at *10-12 (D. Nev. Mar. 30, 2018); *see also King v. Time Warner Cable, Inc.*, 2018 U.S. App. LEXIS 17880, at *12 (2d Cir. June 29, 2018) (agreeing that narrow definition of "capacity" is appropriate). As a result, in this current legal landscape, equipment only qualifies as an ATDS if it has the present ability to store or produce telephone numbers to be called, using a random or sequential number generator.

The return to the plain statutory language of the TCPA is clear: *ACA Int'l* vacated the FCC's unreasonable expansion of the definition of an ATDS in the 2003 and 2015 Orders based on the well-established principle of statutory interpretation that "where the statutory text is 'clear and unambiguous' the court's 'inquiry begins with the statutory text, and ends there as well.'" *Herrick*, 2018 U.S. Dist. LEXIS 83744, at p.6 n.3 (citing *Satterfield v. Simon and Shuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)).

In *Dominguez*, the first Circuit Court opinion addressing the definition of an ATDS after *ACA Int'l*, the Third Circuit Court of Appeals held that the equipment at issue was not an ATDS because it lacked "the present capacity to function as an autodialer by generating random or

sequential telephone numbers and dialing those numbers." *Dominguez*, 2018 U.S. App. LEXIS 17436, at *9. The *Dominguez* opinion clarifies that equipment is an ATDS if it has the present capacity to generate and dial random or sequential telephone numbers. *Id*. In issuing its opinion, the Circuit Court focused on the plain language of the TCPA, and on the actual use of the equipment when placing the communications at issue. *See id*.

There is one district court which found that, although the 2015 Order was vacated in *ACA Int'l*, the D.C. Circuit did not vacate the 2003 Order, and telephone equipment that dials from a list or database still qualifies as an ATDS. *See Reyes v. BCA Fin. Servs*., No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 80690, at *2 (S.D. Fla. May 14, 2018). The opinion in *Reyes*, however, disregard the confusing and unreasonable nature of the 2003 and 2015 Orders – which was the very reason why the *ACA Int'l* Court undisputedly set aside the 2015 Order. Significantly, a sister court within the Eleventh Circuit plainly disagreed with the magistrate's analysis in *Reyes*. *See Sessions v. Barclays Bank Delaware*, 2018 U.S. Dist. LEXIS 108453, at *10-11 (N.D. Ga. June 25, 2018) ("Contrary to the pronouncement of the *Reyes* court, the D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of "capacity" as well as its descriptions of the statutory functions necessary to be an ATDS... the Court finds that the [2003 and 2008 orders] … were vacated in ACA International.")

Likewise, the court in *Pinkus* rejected the argument that the D.C. Circuit could not review the 2003 and 2008 Orders merely because the time to seek review of those orders had passed. 2018 U.S. Dist. LEXIS 125043, at *22. Rather, "the infirmity in the FCC's reasoning" that the *ACA Int'l* Court identified in invalidating the 2015 [Order]" "is equally present" in the 2003 and 2008 Orders. *Id*. at *22-23. "The D.C. Circuit necessarily determined that the 2015 [Order] was

inextricably intertwined with the 2003 Order and the 2008 [Order] insofar as they, too, addressed the capacities a predictive dialer must have to qualify as an ATDS." *Id*. at \*23.

Here, all the calls placed by NSL were made with the assistance of software provided by Interactive Intelligence (the "ININ System"). *See* Ex. "1," Highfield Aff. at ¶ 14. Additionally, all the calls placed by SAC were made with the assistance of software provided by Noble Systems Corp. (the "Noble System") or the ININ System. *See* Ex. "2," Campbell Aff. at ¶ 7. During the time period relevant to this action, both systems used by Defendants did not have the capability to store or produce telephone numbers to be called, using a random or sequential number generator, or to dial such numbers. *See* Defendant's Response to Plaintiff's Statement of Material Facts, ¶¶ 6, 10 & 11; Highfield Aff. at ¶¶ 14-16; Ex "2," Campbell Aff. at ¶¶ 8-11. Both systems could not generate random ten-digit phone numbers and then dial them nor could they generate sequential ten-digit phone numbers and then dial them. *Id.* Additionally, both systems used by Defendants to call Plaintiff required an external database containing a list of telephone numbers in order to place outbound telephone calls, and therefore, could not generate random or sequential numbers by itself. *Id.*

Accordingly, this Court should follow the well-reasoned holdings in *Herrick*, *Marshall*, *Dominguez*, *Sessions*, and *Pinkus*, to find that in order to prevail on his TCPA claims, Plaintiff is required to prove that Defendants' telephone system has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. Here, Plaintiff has unequivocally failed to do so. Despite having ample opportunity to investigate this matter in discovery, Plaintiff declined to do so, and urges the Court to find that such systems meet the ATDS definition without inquiring whether they meet the statutory definition. The mere fact that the calls made to Plaintiff with the assistance of the Noble System and the ININ System did

14

not involve a human keying in the phone number to place each call does not mean they were made from an ATDS.  Rather, under existing law, it is clear that Defendants' Noble System and ININ System software do not qualify as an ATDS.  Accordingly, as Plaintiff cannot raise a genuine dispute as to the fact that the systems used to call him are not capable of generating random or sequential numbers, Plaintiff's TCPA claim fails.

**D.     Plaintiff has failed to prove that he is the regular user and carrier of the cell phone number called by Defendants**

Plaintiff has failed to prove his burden that he is the regular user and carrier of his cellular telephone since the record evidence shows that other individuals shared his cell phone. For purposes of standing to bring a claim pursuant to § 227(b)(1)(A)(iii), the "called party" means the subscriber or regular user of the cell phone service. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) (plaintiff was the "called party" because he was the regular user and carrier of the cellular telephone).

Although Plaintiff states that he is the regular user and carrier of the 0907 number, the record evidence shows otherwise. Several calls placed by NSL to Plaintiff's cell phone number ending in 0907 were answered by other individuals.  *See* Ex. "1," Highfield Aff. at ¶ 13. Moreover, numerous calls placed by SAC to Plaintiff's cell phone number ending in 0907 were also answered by other individuals, such as Plaintiff's brother, Mark Lucoff, and Plaintiff's father, Morton Lucoff.  *See* Ex. "2," Campbell Aff. at ¶ 5.  In fact, on October 7, 2016, SAC placed a call to Plaintiff's cell phone number ending in 0907 and a man identifying himself as Mark Lucoff, Plaintiff's brother, answered the call. *Id.* at ¶ 6. When asked whether he and Plaintiff share the cell phone, Mark Lucoff answered "pretty much." *Id.* Therefore, the record evidence shows that the 0907 number was shared by Plaintiff and his brother. Without

undisputed evidence that Plaintiff was the regular user and carrier of the -0907 number, Plaintiff cannot prove he has standing to bring his TCPA claim.   Therefore, this Court should deny Plaintiff's Motion for Summary Judgment.

### IV. CONCLUSION

The undisputed facts unequivocally prove that Defendants had prior express consent to call Plaintiff. First, Plaintiff could not unilaterally revoke his bargained-for consent to receive calls. Second, to the extent that Plaintiff could revoke his bargained-for consent, Plaintiff nevertheless re-established his express consent by submitting his cell phone number and written consent on his online account. Moreover, Plaintiff failed to prove that Defendants used an automatic telephone dialing system as defined by the TCPA because the dialing systems used by Defendants do not have the ability to generate and dial phone numbers in a random or sequential manner. Lastly, Plaintiff failed to prove that he is the regular user and carrier of his cellular telephone, and as such, cannot be entitled to summary judgment in his favor. Wherefore, for the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment, and enter such further relief as the Court deems just, necessary, and proper.

*s/ Barbara Fernandez*
Barbara Fernandez
Florida Bar No. 0493767
bfernandez@hinshawlaw.com
Neda Ghomeshi
Florida Bar No. 123554
nghomeshi@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
Attorneys for Navient Solutions, LLC and Student Assistance Corporation

16

Case No. 18-CV-60743- Gayles/Seltzer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2019, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

the following:

Donald Yarbrough, Esq.
Post Office Box 11842
Ft. Lauderdale, FL   33339
Tel:  954-537-2000
Fax: 954-566-2235
Attorneys for Plaintiff
don@donyarbrough.com
Attorneys for Plaintiff

*s/ Barbara Fernandez*
Barbara Fernandez
Florida Bar No. 0493767
bfernandez@hinshawlaw.com
Neda Ghomeshi
Florida Bar No. 123554
nghomeshi@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile:  305-577-1063
Attorneys for Navient Solutions LLC and
Student Assistance Corporation

17

303263062v1 1008471