UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60743-CIV-RUIZ/MCALILEY

JOEL D. LUCOFF,

      Plaintiff,

vs.

NAVIENT SOLUTIONS, LLC, *et al.*,

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND ORDER ON MOTION TO STRIKE

This is an action for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*("TCPA"). Plaintiff Joel D. Lucoff and Defendants Navient Solutions, LLC ("Navient") and Student Assistance Corporation ("SAC") have filed cross-motions for summary judgment. (ECF Nos. 21, 24). The Motions have been referred to me for a report and recommendation, and are fully briefed. (ECF Nos. 22, 23, 25, 26, 27, 28, 30, 33, 34, 35, 44, 45, 46, 49, 50, 54). I have carefully considered the parties' memoranda of law, the pertinent portions of the record and the applicable law. For the reasons set forth below, I recommend that the Court grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion.

## I.     BACKGROUND

Plaintiff obtained various student loans to pay for his law school education. (ECF Nos. 22, 45 at ¶ 11).[1] In 2006, Plaintiff signed a Federal Family Education Loan Program ("FFELP") Federal Consolidation Loan Application and Promissory Note. (*Id.* at ¶ 12). Navient is a servicer of student loans, and SAC is engaged in default aversion assistance for the guarantors of student loans made under the FFELP. (*Id.* at ¶¶ 1, 4). Navient and SAC are affiliates, (ECF Nos. 25, 34 at ¶ 19), and share technology services, which includes the system that stores borrowers' consents for receiving automated calls. (ECF Nos. 22, 45 at ¶ 8). If a borrower consents to be called, both Navient and SAC have access to that information. (*Id.* at ¶ 9).

In July 2012, Plaintiff signed an Automatic (Electronic) Debit Authorization form, and listed his cellular telephone number therein, which he sent to SAC. (*Id.* at ¶ 15). The Automatic Debit Authorization form contained the following language:

> I, the Bank Account Holder, authorize Sallie Mae, and its agents or assigns, to communicate with me in connection with this Automatic Debit Authorization or any of the Customer's current or future loans being serviced by Sallie Mae using any telephone number that I provide to Sallie Mae in this Authorization or in the future, even if such telephone number is associated with a cellular telephone. I authorize Sallie Mae to communicate with me using automated telephone dialing equipment and/or artificial or pre-recorded voice messages.

---

[1] As required by Local Rule 56.1, the parties followed the same numbering scheme in their respective Statement of Undisputed Material Facts and Opposition thereto. Therefore, each citation to the factual record is to the parties' respective Statement and Opposition, along with the relevant numbered paragraph(s).

(ECF No. 23-2 at 8). Plaintiff does not dispute that this form constitutes his express consent to receive automated calls from Defendants; the only dispute is whether Plaintiff could later revoke that consent. (ECF No. 45 at ¶¶ 15-18).

Shortly thereafter, in September 2012, the United States District Court for the Western District of Washington in *Mark A. Arthur, Cirilo Martinez, Pari Najafi, and Heather McCue v. Sallie Mae, Inc.*, Case No. C10-0198 JLR, entered a Settlement Order and Final Judgment approving a class action settlement (the "*Arthur* Settlement"). (ECF Nos. 22, 45 at ¶ 34; 23-3 at 50-57). Plaintiff is an *Arthur* Settlement class member. (ECF Nos. 22, 45 at ¶ 34).

The complaint in *Arthur* alleged that Sallie Mae and/or other affiliates or subsidiaries of SLM Corporation violated the TCPA by placing calls to cellular telephones through the use of an automated dialing system and/or an artificial prerecorded voice without the prior express consent of the *Arthur* plaintiffs and putative class members. (ECF No. 23-3 at 9-10). Sallie Mae agreed, "as full and complete consideration" for the Amended *Arthur* Settlement Agreement, to implement "prospective practice changes" and contribute monetary relief. (*Id.* at 17). In particular, the Amended *Arthur* Settlement Agreement provides that:

> Neither Sallie Mae nor any other affiliate or subsidiary of SLM Corporation shall make use of, nor knowingly authorize anyone acting on its/their behalf to make use of, an automated dialing system and/or artificial or prerecorded voice, to contact the cellular telephones of Settlement Class Members *who have made or will make a valid and timely Revocation Request*.

(ECF No. 23-3 at 17) (emphasis supplied). The possibility of submitting a Revocation Request was a form of consideration provided in the *Arthur* Settlement. (ECF No. 23-3 at p. 3, ¶ 8). Plaintiff was given notice of the *Arthur* Settlement, but did not opt out of the Settlement and or submit a Revocation Request. (ECF Nos. 22, 45 at ¶¶ 34-35; 23-3 at p. 3, ¶¶ 5-8). The Amended *Arthur* Settlement Agreement specifies the consequences of failing to submit a Revocation Request. In particular, it states that:

> Any Settlement Class Member who has not submitted or does not submit a valid and timely Revocation Request *will be deemed to have provided prior express consent* to the making of Calls by Sallie Mae or any other affiliate or subsidiary of SLM Corporation to any phone numbers reflected in such entities' records.

(ECF No. 23-3 at 19) (emphasis supplied). Plaintiff does not dispute that he provided his express consent to receive automated calls from Defendants via the *Arthur* Settlement. Again, the only dispute is whether Plaintiff could revoke that consent. (ECF No. 45 at ¶¶ 34-35).

Between June 24, 2014 and April 6, 2018, Navient placed 418 calls and SAC placed 1,700 calls to Plaintiff's cellular telephone number regarding Plaintiff's student loans. (ECF Nos. 45, 50 at ¶¶ 48, 52). Plaintiff has retained recordings of 2 pre-recorded voicemails he received on his cellular telephone from Navient, and 20 pre-recorded voicemails he received on his cellular telephone from SAC. (*Id*. at ¶¶ 42, 44).

On June 24, 2014, Plaintiff called Navient regarding his consolidated federal student loan. (ECF Nos. 22, 45 at ¶ 19). At the beginning of the telephone call, a Navient representative and Plaintiff had the following exchange:

> Q: Is this your cell phone number, xxx-xxx-0907?

> A: That is correct.
>
> Q: Well, to help contact you more efficiently, may Sallie Mae Bank and Navient and their respective subsidiaries, affiliates, and agents contact you at this number?
>
> A: Sure.
>
> Q: *Using an auto-dialer or pre-recorded messages regarding your current or future accounts*?
>
> A: *No*.
>
> Q: *Yes or no*?
>
> A: *No*.

(ECF Nos. 22, 45 at ¶¶ 20-21; 30-1 at 18) (emphasis supplied).

A few minutes later, Plaintiff accessed Navient's website for purposes of completing an auto debit agreement to make payments towards his student loans. (ECF Nos. 22, 45 at ¶ 21). When Plaintiff accessed his online account on Navient's website, his demographic information appeared on a contact information form that asked the customer to "[u]se this form to update and/or verify any part of your contact information. **Required fields are marked with (\*).**" (ECF No. 23-1 at 20) (emphasis in original). Plaintiff's cellular telephone number was already filled in (i.e., auto-populated) on the form. (ECF Nos. 25, 34 at ¶ 15). The field for Plaintiff's cellular telephone was not marked with an asterisk and, thus, was not a required field. (ECF No. 23-1 at 20).

A few lines below Plaintiff's cellular telephone number was the following language:

> By providing my telephone number, I authorize SLM Corporation, Sallie Mae Bank, Navient Corporation and Navient Solutions, Inc., and their respective subsidiaries, affiliates and agents, to contact me at such number using any means of communication, including, but not limited to, *calls placed to my cellular phone using an automated*

> *dialing device, calls using prerecorded messages and/or SMS text*
> *messages*, regarding any current or future loans owned or serviced by
> SLM Corporation, Sallie Mae Bank, Navient Corporation or Navient
> Solutions, Inc., or their respective subsidiaries, affiliates and agents,
> even if I will be charged by my service provider(s) for receiving such
> communications.

(ECF No. 23-1 at 21) (emphasis supplied). Immediately below this authorization was a button labeled "Submit," which Plaintiff clicked. (ECF Nos. 22, 45 at ¶¶ 24, 26). Prior to clicking "Submit," Plaintiff saw his cellular telephone number on the form and did not remove it. (ECF Nos. 22, 45 at ¶ 25). Since submitting his contact information form, Plaintiff has not attempted to revoke his consent. (ECF No. 22, 45 at ¶ 27).

## II.   ANALYSIS

### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the nonmoving party. *See Sada v. City of Altamonte Springs*, 434 Fed. Appx. 845, 847 (11th Cir. 2011). To survive summary judgment, the nonmoving party must make "enough of a showing that the jury could reasonably find for that party." *Gilliard v. Dep't. of Corrections*, 500 Fed. Appx. 860, 863 (11th Cir. 2012) (citation omitted).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted). The moving party

must show that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id*. at 1438. "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (quotation marks and citations omitted); *see also Ray v. Equifax Info. Servs., L.L.C.*, 327 Fed. App'x 819, 825 (11th Cir. 2009) (once the moving party satisfies its burden, "the non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof.") (quotation marks and citation omitted).

> ### B.    <u>Defendants are Entitled to Summary Judgment</u>

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the *prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service…. *unless such call is made solely to collect a debt owed to or guaranteed by the United States*." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied). It is undisputed that between June 24, 2014 and April 6, 2018, Navient and SAC made calls to Plaintiff's cellular telephone number using a prerecorded voice. (ECF Nos. 45, 50 at ¶¶ 42, 44, 48, 52). It is also undisputed that prior to June 24, 2014, Plaintiff provided his express consent to receive autodialed or prerecorded telephone calls from Defendants to his cellular telephone number. (ECF Nos. 22, 45 at ¶¶ 15-18, 34-35). The critical question then is whether Plaintiff revoked his consent.

Plaintiff argues that he revoked his consent during his June 24, 2014 telephone call with Navient's representative. (ECF No. 44 at 5-6). Defendants argue that Plaintiff could not unilaterally revoke his consent because he provided it as part of a bargained-for exchange. (ECF 21 at 5-9). Defendants further argue that even if Plaintiff could and did revoke his prior express consent, he later consented to receive prerecorded calls from Defendants, which he did not thereafter attempt to revoke. (*Id*. at 9-11).

As explained below, I agree that Plaintiff could not unilaterally revoke his consent because it was given as part of a bargained-for contract, namely the *Arthur* Settlement. I also agree that after Plaintiff's purported revocation during his June 24, 2014 telephone call with Navient, he again provided his express consent to receive prerecorded calls from Defendants by submitting the contact information form on Navient's website, and he has not revoked that consent. Accordingly, the undisputed facts establish that Defendants did not violate the TCPA as a matter of law.[2]

> 1.   Plaintiff Could Not Revoke His Prior Express Consent Because He Provided It as Part of a Bargained-For Contract

The Eleventh Circuit has held that a consumer is "free to orally revoke any consent previously given" under the TCPA "in the absence of any contractual restriction to the contrary." *Osario v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014). Plaintiff relies on this holding to argue that he revoked his prior express consent to receive autodialed or prerecorded calls from Defendants because, during his June 24, 2014

---

[2] It is therefore unnecessary to reach Defendants' other argument, that their calls are not actionable under the debt-collection exemption to the TCPA because they were made "solely to collect a debt owed to or guaranteed by the United States."

telephone call with Navient's representative, he answered "No" when asked if Defendants could contact him on his cellular telephone using an auto-dialer or prerecorded messages. (ECF Nos. 44 at 7; 22, 45 at ¶¶ 20-21; 30-1 at 18). However, before he attempted to revoke his consent, Plaintiff was an *Arthur* class member and was bound by the *Arthur* Settlement. *Fostano v. Pioneer Credit Recovery, Inc.*, No. 13-80511-CIV, 2014 WL 657680 at *4 (S.D. Fla. Feb. 20, 2014) ("[i]n the absence of a reversal of [the *Arthur* Settlement] Order and Judgement on appeal, it remains binding upon Plaintiff….").

The Amended *Arthur* Settlement Agreement is a contract in which Plaintiff consented to receive autodialed and prerecorded calls from Defendants to his cellular telephone unless he submitted a Revocation Request, which he did not.  (ECF Nos. 22, 45 at ¶¶ 34-35; 23-3 at p. 3, ¶¶ 5-6, 8; 23-3 at pp. 17, 19). The opportunity for a class member to submit a Revocation Request, and the class member's express consent to receive automated calls if he did not timely do so, was a form of consideration provided in the *Arthur* Settlement. (ECF No. 23-3 at p. 3, ¶ 8).

Another court, *Rodriguez v. Student Assistance Corporation*, No. 17-CV-01577, 2017 WL 11050423 at *1 (E.D.N.Y. Nov. 6, 2017), considered the precise issue here: whether an *Arthur* class member who did not submit a Revocation Request can later unilaterally revoke his consent. The plaintiff in that case, like Plaintiff here, was an *Arthur* class member who received notice of the settlement, did not opt out, did not file a Claim Form, did not execute a Revocation Request and later sued the same defendants here, SAC and Navient, for violation of the TCPA. *Id.* at *1-2. The *Rodriguez* court recognized that as an *Arthur* class member:

> [P]laintiff received consideration in exchange for her consent. She did not have to accept it. She could have opted out of the settlement agreement. She could have executed a Revocation Agreement. By choosing not to do either, she can no more maintain this action than she could start a new one against Sallie Mae for conduct that formed the basis of the allegations in the class action.

*Id*. at *3 (citations omitted).

The plaintiff in *Rodriguez* argued, as Plaintiff argues here, that her revocation was permissible based upon a 2015 FTC Ruling that "a caller may not limit the manner in which revocation may occur." *Id*.; (ECF No. 44 at 7). In rejecting this argument, the *Rodriguez* court relied on the Second Circuit's decision in *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51 (2d Cir. 2017), which found the 2015 FTC Ruling inapplicable because it addressed a consumer who gratuitously gave his consent to be contacted, which is "fundamentally different from revoking bargained-for consent." *Rodriguez*, 2017 WL 11050423 at *3. The *Rodgriuez* court concluded that "[h]ad plaintiff submitted a Revocation Request, defendants would have lost the contractually granted right to contact her. But she did not, and that right was bargained-for consideration that she could not unilaterally revoke." *Id*.

I find the reasoning of *Rodriguez* and *Reyes* persuasive, and adopt it here to conclude that because Plaintiff did not submit a Revocation Request, he could not unilaterally revoke his express consent to receive autodialed and prerecorded calls from Defendants, which he gave as part of the *Arthur* Settlement. This conclusion is consistent with decisions of other courts in this Circuit.

For example, in *Medley v. Dish Network*, *LLC*, the court considered whether a consumer could revoke her consent to receive automated calls from the defendant, which

she provided as part of the parties' contract, a Digital Home Advantage Plan Agreement. *Medley*, No. 8:16-cv-2534, 2018 WL 4092120 at *1 (M.D. Fla. Aug. 27, 2018). The *Medley* court recognized that the Eleventh Circuit's decision in *Osario* did not address the issue before it, "which is whether consent may be unilaterally revoked when it is given as part of a bargained-for contract." *Id.* at *9-12. The *Medley* court conducted a thorough review of the caselaw on this issue, both within and outside this Circuit, and concluded that express consent provided as part of a contractual provision could not be unilaterally revoked. *Id.* (collecting cases). It reasoned that:

> Because an agreement is a manifestation of mutual assent on the part of two or more persons, it is black-letter contract law that one party to an agreement cannot, without the other party's consent, unilaterally modify the agreement once it has been executed.
>
> *****
>
> Nothing in the TCPA indicates that contractually-granted consent can be unilaterally revoked in contradiction to black-letter law.

*Id.* at *10 (quotation marks and citations omitted). I agree with the reasoning of the *Medley* court and adopt it here.

In sum, as reflected in the *Arthur* Settlement, the parties bargained for Plaintiff's prior express consent to receive autodialed and prerecorded calls from Defendants to his cellular telephone number. Plaintiff's attempted revocation during his June 24, 2014 call with Navient's representative was not effective because Plaintiff could not unilaterally revoke his prior consent, which he gave as part of a bargained-for contract (i.e., the *Arthur* Settlement). Thus, Defendants' calls to Plaintiff's cellular telephone did not violate the TCPA because they had his prior express consent to make such calls. Accordingly, the

undisputed material facts establish as matter of law that Defendants did not violate the TCPA and, therefore, they are entitled to summary judgment on the Complaint.

      2.      After His Attempted Revocation, Plaintiff Again Consented to Receive Autodialed and Prerecorded Calls from Defendants

Importantly, even had Plaintiff's attempted revocation been effective, Defendants still did not violate the TCPA because Plaintiff again provided his express consent. The undisputed facts establish that after Plaintiff told Navient's representative that he did not agree to receive autodialed and prerecorded calls from Defendants on his cellular telephone, he submitted his contact information form on Navient's website, which expressly included his consent to receive such calls. Plaintiff argues that his submission did not trigger the consent clause, which begins with the phrase "[b]y providing my telephone number…," because the cellular telephone number field was already populated in the form when he accessed Navient's website. (ECF No. 44 at 6). In other words, Plaintiff contends that he had to physically input his cellular telephone number into the contact information form in order to "provide" it, and thereby trigger the consent clause. I am not persuaded.

It is undisputed that Plaintiff previously provided his cellular telephone number to Defendants by, for example, writing it on his Automatic Debit Authorization form. (*See e.g.,* ECF No. 23-2 at 8). It is also undisputed that Plaintiff saw his cellular telephone number on the contact information form before clicking "Submit." (ECF Nos. 22, 45 at ¶ 25). Plaintiff's cellular telephone number was not a required field, (ECF No. 23-1 at 20), and thus he could have removed it before submitting the contact information form, but did

not do so. The consent clause was clear, conspicuous and located immediately above the "Submit" button. (*Id.* at 21). And, it is undisputed that after submitting the contact information form, Plaintiff has not attempted to revoke his consent. (ECF No. 22, 45 at ¶27).

On this record, I find that Plaintiff "provided" his cellular telephone number to Defendants as set forth in the consent clause, which became binding upon him when he submitted the contact information form. Again, the undisputed material facts establish as matter of law that Defendants did not violate the TCPA because they had Plaintiff's prior express consent to make autodialed and prerecorded calls to his cellular telephone.

## III.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court concludes that Navient and SAC are entitled to judgment as a matter of law on Plaintiff's Complaint. I therefore **RESPECTFULLY RECOMMEND** that the Court **GRANT** Defendants' Motion for Summary Judgment (ECF No. 21) and **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 24).

**No later than fourteen (14) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

IV.     **ORDER**

Plaintiff filed a Motion to Strike Defendants' Reply to Plaintiff's Opposition to Defendants' Statement of Facts (the "Reply Facts") and the Affidavit of Sheryl Highsmith attached thereto (the "Reply Affidavit"). (ECF No. 55). The Motion to Strike is fully briefed. (ECF No. 58). Plaintiff argues that the Reply Facts and Reply Affidavit are improper because they include additional facts that were not set forth in Defendants' initial Statement of Facts. The Court did not rely on the allegedly "new" facts or the Reply Affidavit to resolve the parties' cross-motions for summary judgment and, thus, it need not address Plaintiff's argument. Accordingly, the Court hereby **ORDERS** that Plaintiff's Motion to Strike (ECF No. 55) is **DENIED AS MOOT**.

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 28th day of May, 2019.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Rodolfo A. Ruiz
     Counsel of record

14