UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 18-60743-Civ-Gayles/Seltzer

JOEL D. LUCOFF,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC, and
STUDENT ASSISTANCE CORPORATION

    Defendants.

_____/

## PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Joel D. Lucoff, objects to the Report and Recommendation on Cross Motions for Summary Judgment (DE 73) ("the report") and, in support thereof, states as follows:

The report recommends granting Defendants' motion for summary judgment and denying Plaintiff's based upon two grounds: 1. Plaintiff's prior consent to automated calls derived from his July 2012 Automatic (Electronic) Debit Authorization form providing his cellular number to Defendants is irrevocable based upon the consent derived from the September 17, 2012 order in *Mark A. Arthur, Cirilo Martinez, Pari Najafi, and Heather McCue v. Sallie Mae, Inc.*, Case No. C10-0198 JLR approving a class settlement agreement ("the Arthur settlement agreement"). and 2. That after his oral revocation, demonstrated by an audio recording the content of which is undisputed, Plaintiff subsequently consented to calls within the same conversation via Defendant's website.

1

## **THE ARTHUR CONSENT IS REVOCABLE**

Plaintiff concedes that he provided his cellular number to Defendant in his July 2012 Automatic (Electronic) Debit Authorization form. Provision of a cellular number to a creditor generally acts as a consent to automated calls. Plaintiff, however, objects to the conclusion that the September 2012 order approving the settlement agreement in the Arthur case renders a consent irrevocable. The Arthur settlement agreement provides in relevant part:

> (b) Future Changes In Laws Or Regulations. To the extent Congress, the FCC or any other relevant regulatory authority promulgates different requirements under the TCPA, or any other law or regulation that would govern any conduct affected by the Amended Settlement, those laws and regulatory provisions shall control.

*Amended Settlement Agreement*, (DE 23-3 at page 19 of 69

Three years after the Arthur case, the FCC *did* issue an order establishing that consent is revocable. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("2015 FCC Order"). Specifically, the FCC stated that:

> We turn first to the threshold issue of whether a consumer has the right to revoke previously-given prior express consent. Because the TCPA does not speak directly to the issue of revocation, the Commission can provide a reasonable construction of its terms. We agree with the Third Circuit that, "in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers." We therefore find the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts. This gives consent its most appropriate meaning within the consumer-protection goals of the TCPA.

2015 FCC Order, 30 F.C.C.R. at 7993-94.

Moreover, perhaps most importantly for the instant analysis, the FCC further stated that "we do not rely on common law to interpret the TCPA to include a right of revocation. We simply note our conclusion is consistent with the common **law right of revocation and do not attempt to substitute common law for statutory law**." *Id.* at 7995 (emphasis added). Additionally, if that were not clear enough, the FCC proclaimed that "**an interpretation that would lock consumers into receiving unlimited, unwanted texts and voice calls is counter to the consumer-protection purposes of the TCPA. . .**" *Id.* at 7970 (emphasis added).

Because the FCC subsequently issued a order providing for revocation of consent, any consent derived from the Arthur agreement or previously provided by Plaintiff is revocable based upon the FCC's subsequent order as the Arthur agreement specifically adopted subsequent changes by the FCC.

### THE ARTHUR AGREEMENT DID NOT RESTRICT FUTURE REVOCATION BY THE TERMS OF THE AGREEMENT ITSELF

The Arthur agreement provided that a class member, as Plaintiff was, could revoke consent by sending in a form to the class administrator revoking consent. Plaintiff concedes that he did not send in such a form. The agreement, however, merely states that failure to provide a revocation notice shall be "deemed" as consent. The agreement does not state that a "deemed" consent is irrevocable. There is no term or condition of the Arthur agreement that even addresses future revocation. The agreement does not describe or make the consent obtained as irrevocable. By failing to address the issue of future revocation, the agreement itself does not preclude future revocation. It was not a term or condition of the agreement that the "deemed" consent was permanent and irrevocable and thus it was revocable pursuant to the terms of the agreement itself. Separate from the argument that the FCC later changed the rules on consent making it revocable, the agreement itself did not render the consent obtained as irrevocable.

## BINDING ELEVENTH CIRCUIT PRECEDENT ALLOWS REVOCATION WHEN THE AGREEMENT GIVING RISE TO CONSENT DOES NOT RESTRICT REVOCATION

The consent found in the July 2012 Automatic (Electronic) Debit Authorization form and the consent derived from Plaintiff's failure to send in a revocation from in the Arthur case are provisions of consent. Neither document restricts the revocation of consent and thus those consents are revocable based upon *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). The Northern District of Alabama has carefully explained the application of *Osorio*:

> In its Memorandum Opinion, the court failed to correctly follow *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014). In *Osorio*, the Eleventh Circuit addressed whether the TCPA permits consumers to orally revoke their consent to receive autodialed calls. The Eleventh Circuit first "presume[d] from the TCPA's silence regarding the means of providing or revoking consent that Congress sought to incorporate 'the common law concept of consent.'" *Osorio*, 746 F.3d at 1255 (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013)). The Eleventh Circuit then found that "common-law notions of consent generally allow oral revocation." *Id.* (citing *Pepe v. Shepherd*, 422 So. 2d 910, 911 (Fla. Dist. Ct. App. 1982)). So, the Eleventh Circuit concluded that "*in the absence of any contractual restriction to the contrary*," consumers "were free to orally revoke any consent previously given." *Id.* (emphasis added).
>
> Here, no "contractual restriction to the contrary" exists. Ms. Few's contract does not restrict the means by which she may revoke her prior express consent, and so under *Osorio*, Ms. Few was free to orally revoke her consent.
>
> Crucially, the contractual grant of consent is *not* a "contractual restriction to the contrary" under *Osorio* because it does not restrict the *means* of revocation. *See Osorio*, 746 F.3d at 1255 ("We therefore conclude that Betancourt and Osorio, in the absence of any contractual restriction to the contrary, were free to orally revoke any consent previously given to State Farm to call No. 8626 in connection with Betancourt's credit-card debt.").

4

> For example, a contract provision stating that Ms. Few may revoke consent only in writing would be a "contractual restriction to the contrary" of Ms. Few's right to "orally revoke any consent previously given," and would therefore invalidate Ms. Few's oral revocation. *Osorio*, 746 F.3d at 1255. No such provision exists and her oral revocation was effective.

Few v. Receivables Performance Mgmt., LLC, No. 1:17-CV-2038-KOB, 2018 U.S. Dist. LEXIS 192854, at *6-7 (N.D. Ala. Nov. 13, 2018)

Because the documents upon which Defendants rely (the debit authorization form and the Arthur agreement) are a grant of consent and do not establish a contractual restriction to the contrary, Plaintiff was free to orally revoke consent.

## THE REPORT RELIES UPON REYES, WHICH HAS BEEN REJECTED BY NUMEROUS DISTRICT COURTS IN THE ELEVENTH CIRCUIT

The report relies upon *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 53 (2d Cir. 2017) ("Reyes") As the *Few* decision notes *Reyes* has been rejected by several district courts in the Eleventh Circuit:

> Several district courts in the Eleventh Circuit have relied on *Osorio* and found that a party may unilaterally and orally revoke consent to receive debt-collection calls even in the presence of a contractual grant of consent. *See Patterson v. Ally Fin., Inc.*, 2018 U.S. Dist. LEXIS 15203, 2018 WL 647438, at *5 (M.D. Fla. Jan. 31, 2018); *Target Nat'l Bank v. Welch*, 2016 U.S. Dist. LEXIS 38635, 2016 WL 1157043, at *5 (M.D. Fla. Mar. 24, 2016); *Smith v. MarkOne Fin., LLC*, 2015 U.S. Dist. LEXIS 11803, 2015 WL 419005, at *3 (M.D. Fla. Feb. 2, 2015). This court now does the same.

Few v. Receivables Performance Mgmt., LLC, No. 1:17-CV-2038-KOB, 2018 U.S. Dist. LEXIS 192854, at *7 (N.D. Ala. Nov. 13, 2018)

The report cites *Rodriguez v. Student Assistance Corporation*, No. 17-CV-01577, 2017 WL 11050423 at *1 (E.D.N.Y. Nov. 6, 2017) as support for the court's conclusion that the Arthur settlement is irrevocable. That ruling would be distinguished, however,

5

because the Eastern District of New York is not bound by the Eleventh Circuit's holding in Osorio.

As mentioned in the report, one district court in the Eleventh Circuit has adopted Reyes: Medley v. Dish Network, LLC, No. 8:16-cv-2534-T-36TBM, 2018 U.S. Dist. LEXIS 144895 (M.D. Fla. Aug. 27, 2018). That decision is presently on appeal to the Eleventh Circuit and has been fully briefed but no decision has yet been issued.

### PLAINTIFF DID NOT KNOWINGLY RE-CONSENT DURING HIS TELEPHONE CALL WITH DEFENDANT IN WHICH HE REVOKED CONSENT AS THE WEBPAGE LANGUAGE IS AMBIGUOUS, NOT SUFFICIENT TO FORM A RE-CONSENT AND BECAUSE DEFENDANT MISLEAD PLAINTIFF REGARDING CONSENT

On June 24, 2014, Plaintiff telephoned Defendant seeking to settle his student loans by a lump sum payment for less than the current balance. The content of this conversation is not in dispute as Defendant recorded the call and the parties agreed upon the language of the transcription. See transcript (DE 28-4). One of the first things Defendant's representative did was ask Plaintiff if Defendants could call his cellular telephone. Plaintiff said yes. Defendant's representative then asked if Defendants could call his cellular telephone with an autodialer or prerecorded message. Plaintiff said "No" and said so twice. Plaintiff also declined to authorize text messages. Then Defendant's representative said "Let me just set update this then" referring to the fact that Plaintiff was declining all future automated calls. Defendant knew from that moment on that Plaintiff was willing to allow calls to his cellular telephone but **not** with an autodialer. The representative said Defendant could not accept an offer for a lump sum payment at less than the full amount. Plaintiff then says he wants to get the loan current and him and

the representative discusses his family size and income. Then the representative says the account must be brought current before Plaintiff would be allowed to establish automatic payments via his debit card and the representative directs Plaintiff to Defendant's website. The representative then says "So it would be best if you could go to our website and you can apply for the automatic debt pay." When the representative said this he already knew Plaintiff was revoking consent to automated calls but OK with non-automated calls. The representative then emails a login reminder to Plaintiff as he does not know his user ID for the website. After directing Plaintiff to the website and to its specific pages to authorize auto debit the representative even directs and instructs Plaintiff in the use of the site "If you put your mouse over it , there should be a dropdown and it says Automatic Debit". After Plaintiff sets up auto debit on the webpage, Defendant representative says:

Chad:   Yes, sounds good.  And yeah, and just wait for the confirmation, okay?

Transcript, (DE 28-4).

By saying "Yes, sounds good." the representative, Chad, is confirming to Plaintiff that all is well when he knows that Plaintiff just revoked consent. Chad then tells Plaintiff to disregard future calls:

Lucoff: Okay.  So, are we – are you and I done for today, sir?

Chad:   Yes, sir.  But until you receive the email stating that you've been qualified or you've been accepted for the automatic debit, you will still receive phone calls from us because you're still past due.

Lucoff: Understood.

Chad:   Just disregard those, okay?

At this stage, Plaintiff has orally revoked consent, *filled out the webpage* and after that

7

occurs, Defendant's representative apparently confirms the revocation by saying the calls will stop once Plaintiff receives the email confirming his acceptance of automatic debit payments. This discussion that future calls will be only a few is consistent with Plaintiff's revocation being fully in effect. A jury could find that the sequence of events, i. e. the representative's direction of Plaintiff to the website immediately after Plaintiff orally revoked consent and the representative's verbal acknowledgement thereafter that there would only be a few calls was a confirmation from Defendants to Plaintiff that he has successfully revoked consent as he stated at the beginning of the call with Defendant's representative. Especially in light of the language on the very first page of the website that states:

> **If you have made a change on the upfront demographics page, please note that it may take up to 24 hours to update on our system.**
>
> **We would like to ensure we have the most up to date records for your student loan account. Please take a few moments to review your contact information and update as needed. If no changes are needed, please click Submit.**
>
> It is important we have your most current address, telephone number, and email address. Use this form to update and/or verify any part of your contact information.

Webpage, (DE 23-1 page 20 of 41. (bold in original)

      Defendant's directed Plaintiff in **bold letters** to hit the Submit button in the sentence *at the top of the page* without any further reading or consideration as long as the information was up to date, when Defendant knew that Plaintiff had just revoked consent to automated calls and

8

when Defendant knew that buried below at the bottom of the page and not in bold, was language that directly contradicts Plaintiff's express representation to Chad that he no longer wants to receive automated calls. There is nothing at the top of the page directing Plaintiff to read further or that there is information buried below that contradicts his express request that automated calls stop or that might influence his decision to hit the Submit button. The language at the top of the page says the purpose for the demographics including Plaintiff's cellular number is to ensure Defendant has the most current information, it does not say it is a consent to automated calls nor does it direct the reader to the language buried below that Defendants claim is a re-consent to automated calls. Further confusing the matter is the language about it taking 24 hours for information to update in Defendants system. Based upon the representative's statements discussed below, that statement signals to the reader that information updated moments ago might not yet be updated and will later be updated to reflect Plaintiff's revocation of consent to automated calls. A jury could readily find that this webpage was misleading and confusing and directed Plaintiff to hit the Submit button based solely on whether the information was correct, not that it acted as a consent to future automated calls when minutes before in the very same telephone call Plaintiff made it resoundingly clear that he no longer wished to receive the 1,700 automated telephone calls he received thereafter. Unlike the Magistrate, who only focused on the consent language at the bottom of the page, a jury could readily find that the express direction at the top of the webpage to hit the Submit button if the information is correct eliminated the language at the bottom of the page supposedly re-consenting to calls Plaintiff just asked to be stopped.

Even if the language at the bottom of the page was determined to be clearly and convincingly presented, it does not amount to a re-consent because of an ambiguity in that

language which reads in relevant part:

> By providing my telephone number, I authorize SLM Corporation, Sallie Mae Bank, Navient Corporation and Navient Solutions, Inc, and their respective subsidiaries, affiliates and agents, to contact me at such number, using any means of communication, including, but not limited to calls placed to my cellular phone using an automated dialing device, calls using pre-recorded messages and/or SMS text messages, regarding any current or future loans owned or serviced by SLM Corporation, Sallie Mae Bank, Navient Corporation or Navient Solutions, Inc., or their respective subsidiaries, affiliates and agents, even if I will be charged by my service provider, or providers, for receiving such communications.

Plaintiff's Statement of Material Facts, Number 17, (DE 25)

As Plaintiff argued and as the Magistrate rejected, Plaintiff did not "provide" his cellular number on the website, it was already populated when he arrived at the webpage. Defendant drafted this language and as the drafter of an agreement ambiguities are construed against Defendant. The word "providing" is ambiguous because it connotes a temporal aspect. It is undisputed that Plaintiff did not provide his cellular number at the time the webpage appeared on his computer as it was already filled-in. At that point in time, Plaintiff is **not** the provider of the number, Defendant is. Especially when moments prior Plaintiff said he no longer consented to calls and the representative, Chad, stated he was updating the information and that Plaintiff should disregard any calls he might receive until Defendant sent the confirming approval of the automatic payments. A jury could find that the revocation of consent moments before and confirmation from Chad that the records would be updated are sufficient to hold that Plaintiff is not the provider of the number because he may rely on the updating of the information announced by Chad with the caveat that only a few calls, not 1,700, would be forthcoming.  If "providing" refers to years prior when Plaintiff filled out a prior auto debit form, that is an ambiguity that is not addressed in the language of the website, which should be construed against Defendant based upon contract principles. Moreover, at the summary judgment stage inferences are made in favor of the non-movant. There is an inference that the webpage

language was not clear, that Plaintiff is not the "provider" of the number and that he specifically directed Chad to stop the calls which Chad confirmed. Defendant frustrated Plaintiff's efforts to stop the calls by directing him to the website, guiding though it, confirming his information would be updated then tricking him with language buried way below the top of the webpage which gave him the all clear to hit the Submit button without any reference to the language at the bottom of the page. These actions by Defendant are misleading and in breach of the duty of good faith and fair dealing attendant to every agreement. In considering the language of the webpage as a whole a jury could readily find that it does not amount to a re-consent.

Respectfully submitted,

DONALD A. YARBROUGH, ESQ.
Attorney for Plaintiff
Post Office Box 11842
Fort Lauderdale, Florida 33339
Telephone: (954) 537-2000
Facsimile: (954) 566-2235
don@donyarbrough.com

<u>s/Donald A. Yarbrough</u>  
Donald A. Yarbrough, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 18-60743-Civ-Gayles/Seltzer

JOEL D. LUCOFF,

    Plaintiff,

v.

NAVIENT SOLUTIONS, LLC, and
STUDENT ASSISTANCE CORPORATION

    Defendants.

_____/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 11, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                      s/Donald A. Yarbrough
                                                      Donald A. Yarbrough, Esq.

## **SERVICE LIST**

Ms. Barbara Fernandez, Esq.
Hinshaw & Culbertson, LLP
4 Floor
2525 Ponce de Leon Boulevard
Coral Gables, FL 33134
Telephone: 305-428-5031
Facsimile: 305-577-1063
Electronic Mail Address: bfernandez@hinshawlaw.com

Via Notices of Electronic Filing generated by CM/ECF