UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CIV-60743-RAR

JOEL D. LUCOFF,

       Plaintiff,

v.

NAVIENT SOLUTIONS, LLC, *et al.*,

       Defendants.

_____/

## ORDER AFFIRMING AND ADOPTING REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Magistrate Judge Chris McAliley's Report and Recommendations on Cross-Motions for Summary Judgment and Order on Motion to Strike [ECF No. 73] ("Report"), filed on May 28, 2019.  On June 11, 2019, Plaintiff filed an Objection to the Report [ECF No. 77] ("Objection"), and Defendants filed a Response to Plaintiff's Objection [ECF No. 78] ("Response") on June 25, 2019.  Plaintiff did not file a reply to Defendants' Response. The Report recommends the undersigned grant Defendants' Motion for Summary Judgment [ECF No. 21] and deny Plaintiff's Motion for Summary Judgment [ECF No. 24]. Because Plaintiff filed an objection to the Report, the Court reviews the Report *de novo*.  FED. R. CIV. P. 72(b)(3).  Having reviewed the Report, Defendants' Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that the Report [ECF No. 73] is hereby **AFFIRMED AND ADOPTED** as set forth herein.

## BACKGROUND

Defendant, Navient Solutions LLC ("Navient"), is a loan service provider formerly known as Sallie Mae, Inc.  Highfield Aff. [ECF No. 23-1] ¶¶ 4, 14; Compl. ¶ 7.  Defendant Student

Assistance Corporation ("SAC") is an affiliate of Navient that presents repayment plans to borrowers whose loans are delinquent. Campbell Aff. [ECF No. 23-2] ¶¶ 5-8, 11. Navient and SAC share technology services, including a platform that stores borrowers' consents for receiving automated calls. *See* Defs.' Statement of Undisputed Material Facts in Support of Defs.' Mot. Summ. J. [ECF No.22], Pl.'s Opposition to Defs.' Statement of Undisputed Material Facts [ECF No. 45] (collectively, "Defs. SOMF") ¶ 8.[1]

Plaintiff obtained various student loans to fund his law school education. *See* Pl. Dep. [ECF No. 23-4] 35:16-25. On August 2, 2006, Plaintiff signed a Federal Family Education Loan Program ("FFELP") Federal Consolidation Loan Application and Promissory Note (the "Application"). *See* Defs. SOMF ¶ 12; *see also* Highfield Aff. ¶ 8; FFELP Application [ECF No. 23-1-A]. Plaintiff was approved for an FFELP loan, and it was disbursed approximately one month later. Highfield Aff. ¶ 9. It is undisputed that Navient is the servicer of Plaintiff's FFELP loan. *See* Defs. SOMF ¶ 15.

### A. *Arthur* Settlement

In *Arthur, et al. v. Sallie Mae, Inc.*,[2] borrowers brought a class action lawsuit alleging that Sallie Mae Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. section 227 *et seq.*,[3] by placing telephone calls with an automated dialing system and/or artificial prerecorded

---

[1]  As required by Local Rule 56.1, the parties followed the same numbering scheme in their respective Statement of Undisputed Material Facts and Opposition thereto. Therefore, each citation to specific numbered paragraph(s) corresponds to the respective Statement of Undisputed Material Fact and Opposition.

[2]  No. C10-0198-JLR filed in the United States District Court for the Western District of Washington.

[3]  The TCPA prohibits: (1) "use of an automatic telephone dialing system[,] . . . without the prior express consent of the called party, to call any . . . cellular telephone, or other service for which the receiver is charged for the call"; (2) use of "artificial or prerecorded voice messages to call residential telephone lines without prior express consent"; (3) "sending unsolicited advertisements to fax machines"; and (4) "automatic telephonic dialing systems to engage two or more of a business' telephone lines simultaneously." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012). A successful plaintiff may

voice without the prior consent of the borrowers and other similarly situated individuals. *See generally* Am. Settlement Agreement [ECF No. 23-3-B] ("*Arthur* Settlement"). The *Arthur* plaintiffs and Sallie Mae and all of its affiliates or subsidiaries, both current and prospective (collectively, "Sallie Mae") entered into a settlement agreement where Sallie Mae agreed, "as full and complete consideration" to implement "prospective practice changes" and contribute monetary relief. *Id.* at 9.

With respect to "practice changes," Sallie Mae agreed not to use, or knowingly authorize someone acting on its behalf to make use of, "an automated dialing system and/or artificial or prerecorded voice, to contact the cellular telephones of Settlement Class Members who have made or will make a valid and timely Revocation Request."[4] *Id.* at 9. Sallie Mae also agreed to give all class members clear instructions on how to make a valid and timely Revocation Request and direct claimants to the agreed upon form. *Id.* at 10-11. If a settlement class member did not submit a valid and timely Revocation Request the settlement class member was "deemed to have provided prior express consent" to Sallie Mae to make calls (as defined in the TCPA) to any phone number(s) reflected in the entities' records and any other "request for a revocation will be invalid." *Id.* at 11. The parties do not dispute that the opportunity to submit a Revocation Request was a form of consideration for the *Arthur* Settlement. Defs. SOMF ¶ 8.

The following facts are undisputed. As a recipient of an FFLEP loan, Plaintiff is an *Arthur* class member. *Id.* at ¶ 34. On April 14, 2012, Plaintiff was given notice of the *Arthur* Settlement and instructions on how to complete a Revocation Request. *Id.*; *see also* Kierkegard Aff. [ECF

---

be entitled to actual damages or $500 for each violation, whichever is greater. *Id.* "Damages may be trebled if 'the defendant willfully or knowingly violated' the [TCPA]." *Id.*

[4] A "Revocation Request" is "a valid and timely request . . . by a Settlement Class Member not to receive Calls through use of an automated dialing system and/or an artificial or prerecorded voice on a specific cellular telephone number provided to any of the Released Parties." *Id.* at 7.

No. 23-3] ¶ 5.  Plaintiff failed to opt out of the *Arthur* settlement and failed to submit a Revocation Request.  Defs. SOMF ¶ 34; *see also* Kierkegard Aff. ¶¶ 6-8.  By failing to submit a Revocation Request, Plaintiff expressly consented to receive automated calls from Sallie Mae.  Defs. SOMF ¶ 34.

### B.  Loan Consolidation and Alleged Revocation of Consent

On June 24, 2014 (two years after receiving notice of the *Arthur* settlement), Plaintiff contacted Navient to discuss a settlement offer for his FFLEP loan.  Defs. SOMF ¶ 19; Pl.'s Statement of Undisputed Material Facts in Support of Pl.'s Mot. Summ. J. [ECF No.25], Defs.' Opposition to Pl.'s Statement of Undisputed Material Facts [ECF No. 34] (collectively, "Pl. SOMF") ¶ 12.[5]  During this communication, a Navient representative and Plaintiff had the following undisputed exchange:

> Q: Is this your cell phone number, xxx-xxx-0907?
> A: That is correct.
> Q: Well, to help contact you more efficiently, may Sallie Mae Bank and Navient and their respective subsidiaries, affiliates, and agents contact you at this number?
> A: Sure.
> Q: Using an auto-dialer or pre-recorded messages regarding your current or future accounts?
> A: No.
> Q: Yes or no?
> A: No.

Transcript of Call on June 24, 2014 [ECF No. 28-4]; Defs. SOMF ¶ 20.  The parties do not dispute that Plaintiff attempted to revoke his prior express consent by answering "no" during this telephone conversation.  *Id.*

---

[5]  As required by Local Rule 56.1, the parties followed the same numbering scheme in their respective Statement of Undisputed Material Facts and Opposition thereto.  Therefore, each citation to specific numbered paragraph(s) corresponds to the respective Statement of Undisputed Material Fact and Opposition.

Shortly after Plaintiff answered "no" to the Navient representative, Plaintiff accessed Navient's website to complete an auto debit agreement.  Defs. SOMF ¶ 21; Highfield Aff. ¶¶ 12-13; Pl. Dep. 83: 7-10.  Before accessing the auto debit agreement, Plaintiff was prompted with a demographic page requesting Plaintiff to update and/or confirm his contact information.  Pl. Dep. 75:2-8; Highfield Aff. ¶ 13; *see also* Website Screenshot [ECF No. 23-1-C].  If no changes were needed, Plaintiff was directed to submit his demographic information.  *See* Website Screenshot.  Because Plaintiff had already provided his contact information to Navient in the past, his information automatically populated into the demographics page.  Pl. Dep. 76:4-11.  Although some contact information was *required* by Navient to proceed to the auto debit form, Plaintiff was not required to provide a cell phone number.  *See* Website Screenshot ("Required fields are marked with (*).") (emphasis omitted).  It is undisputed Plaintiff saw his telephone number, but Plaintiff did not delete it.  Defs. SOMF ¶ 25.  Below Plaintiff's telephone number, the demographics page contained the following language:

> By providing my telephone number, I authorize SLM Corporation, Sallie Mae Bank, Navient Corporation and Navient Solutions, Inc., and their respective subsidiaries, affiliates and agents, to contact me at such number using any means of communication, including, but not limited to, *calls placed to my cellular phone using an automated dialing device, calls using prerecorded messages and/or SMS text messages*, regarding any current or future loans owned or serviced by SLM Corporation, Sallie Mae Bank, Navient Corporation or Navient Solutions, Inc., or their respective subsidiaries, affiliates and agents, even if I will be charged by my service provider(s) for receiving such communications.

*See* Website Screenshot (emphasis added); *see also* Pl. Dep. 77:2-23.  The parties agree that Plaintiff saw the above-mentioned language.  Pl. Dep. 78:3-5.  It is also undisputed that Plaintiff "clicked through" the demographics page by submitting it to Navient *with* the above authorization. Defs. SOMF ¶ 26; Pl. Dep. 84: 8-11; Highfield Aff. ¶ 13.  The parties also agree that Plaintiff did not attempt to revoke his consent after submitting the contact information.  Defs. SOMF ¶ 27; Highfield Aff. ¶ 16.

After submitting the demographics page and eventually completing the auto debit form, Plaintiff submitted payments by automatic debit for the months of September, October, and November.  Highfield Aff. ¶ 17.  However, "each of these payments were returned due to a stop payment issued by Plaintiff's financial institution."  *Id.*  Because Plaintiff's payments were returned, Plaintiff's FFLEP loan became delinquent prompting Navient and SAC to contact Plaintiff.  *Id.* at ¶ 18.  It is undisputed that SAC called Plaintiff's cellular phone 1,549 times with an automated device and Navient called Plaintiff's cellular phone 418 times with an automated device.[6]  Pl. SOMF ¶ 6.

### C.  Procedural History

On April 6, 2018, Plaintiff filed a Complaint against Defendants [ECF No. 1] for allegedly violating the TCPA by using an automatic telephone dialing system or pre-recorded or artificial voice to contact Plaintiff on his cellular telephone.  Compl. ¶¶ 1, 17.  Plaintiff claims Defendants left "hundreds of pre-recorded telephone messages on [his] cellular telephone . . . in an effort to collect or service a student loan."  Compl. ¶¶ 10-11.  On February 8, 2019, Plaintiff and Defendants filed cross Motions for Summary Judgment and their respective Statements of Undisputed Facts.  Plaintiff and Defendants filed Responses in Opposition [ECF Nos. 33, 44,], and only Defendants filed a Reply in Support of their Motion for Summary Judgment [ECF No. 49].

Defendants maintain that Plaintiff provided his express consent as consideration for the *Arthur* Settlement when he failed to opt out of the class action and failed to submit a valid and timely Revocation Request.  Defs. Mot. Summ. J. at 8.  Consequently, Defendants argue that Plaintiff cannot unilaterally revoke his consent, and any attempt to revoke his consent was

---

[6]  The parties do dispute whether the automatic device Naivent used to contact Plaintiff was an "automatic telephone dialing system" as defined by the TCPA.

ineffective.  And even if Plaintiff could revoke his consent, Defendants argue that Plaintiff *reconsented* by submitting the demographic page to Defendants.  *Id.* at 8-9, 11.[7]

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Id.*

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party

---

[7]  Defendants also argue that their calls are not actionable under the debt-collection exemption to the TCPA because they were made "solely to collect a debt owed to or guaranteed by the United States."

has shouldered its initial burden, the burden shifts to the non-moving party to "'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'"  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quoting *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)).

## ANALYSIS

The parties do not dispute that Plaintiff attempted to revoke his consent on June 24, 2014. The parties merely dispute whether Plaintiff's attempt *effectively* revoked his prior express consent.  The Court finds that Plaintiff's bargained-for consent cannot be unilaterally revoked because it was given as consideration for a bargained-for exchange.  And nonetheless, Plaintiff reconsented to Defendants contacting him through means otherwise prohibited by the TCPA when he submitted his demographic information to Navient.  Consequently, Defendants did not violate the TCPA as a matter of law, and summary judgment must be granted in favor of Defendants.[8]

### A.  Bargained-For Consent

In *Osorio v. State Farm Bank, F.S.B.*, the Eleventh Circuit juxtaposed the TCPA's revocation procedure against the writing requirement under the Fair Debt Collection Practices Act. 746 F.3d 1242, 1255 (11th Cir. 2014).  The court concluded that the TCPA did not "impose a similar in-writing requirement[,]" and therefore, presumed Congress intended to adopt the common law concept of consent and revocation.  *Id.*  Under common law, oral revocation of consent was generally permitted.  *Id.*  Consequently, the court concluded that "*in the absence of any contractual restriction to the contrary*," oral revocation was permitted.  *Id.*  (emphasis added).

---

[8]  Because the Court finds Defendants did not violate the TCPA as a matter of law, it need not determine whether Defendants' calls to Plaintiff were exempt under the federal debt-collection exemption provided in the TCPA.

A year after the Eleventh Circuit's decision in *Osorio*, the Federal Communications Commission ("FCC") issued a decision clarifying the consent requirement and a consumers' ability to revoke consent under the TCPA. *See generally In the Matter of Rules & Regulations Implementing the Tel. Consumer Pro. Act of 1991*, 30 F.C.C. Rcd. 7961, 7994-7999 (hereinafter, "2015 FCC Ruling"). The FCC determined that the "most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts . . . in any reasonable manner that clearly expresses his or her desire not to receive further calls." *Id.* at 7993-94, 7999.

Almost three years after the 2015 FCC Ruling, the District of Columbia Circuit Court of Appeals reviewed the 2015 FCC Ruling with *Chevron* deference. *See ACA Int'l v. FCC*, 885 F.3d 687, 694-95 (D.C. Cir. 2018). There, the court affirmed the FCC's decision to allow consumers to "revoke consent at any time and through any reasonable means" and the prohibition against callers unilaterally designating "acceptable means of revocation." *Id.* at 694, 709. However, the D.C. Circuit highlighted the narrow applicability of the 2015 FCC Ruling, finding that it "does not address revocation rules mutually adopted by contracting parties." *Id.* at 710; *see also Reyes v. Lincoln Automotive Fin. Servs.*, 861 F.3d 51, 56 (2d Cir. 2017) (noting the 2015 FCC Ruling and *Osorio* considered only whether a "consumer who has freely and unilaterally given his or her informed consent can be contacted [and] later revoke that consent[,]" not whether a consumer can revoke consent given as "bargained-for consideration in a bilateral contract"). Accordingly, the 2015 FCC Ruling does not apply in circumstances where the consumer has given consent as consideration in a bargained-for contract.

Because the 2015 FCC Ruling does not apply in situations where the consumer gives consent as part of a contract and the TCPA is otherwise silent, the Second Circuit resolved this issue by relying on common law. In *Reyes*, the Second Circuit found that under common law, it

was "clear that consent to another's action can 'become irrevocable' when it is provided in a legally binding agreement, in which case any 'attempted termination' is not effective." 861 F.3d at 57 (citations omitted).  There, the Second Circuit found consent given as part of a lease agreement was not gratuitous, and therefore, the consent was irrevocable.[9]  *Id.*; *see also Rodriguez v. Student Assistance Corporation*, No. 17-01577, 2017 WL 11050423, at *3 (E.D.N.Y. Nov. 6, 2017) (determining that consent given as consideration in the *Arthur* Settlement is binding and cannot be unilaterally revoked).

The Eleventh Circuit has yet to decide whether consent given as consideration for a bargained-for exchange may be unilaterally revoked.  However, several sister district courts have tackled this issue.[10]  In *Medley*, the consumer signed an agreement with Dish Network containing a consent provision for Dish (and any other affiliated debt collecting agency) to contact the consumer by an automatic or predictive dialing system to discuss any outstanding debt.  2018 WL 4092120 at * 1.  Because the consumer provided her telephone number in a contract for services as opposed to an application or gratuitously, the court determined the consumer was unable to unilaterally revoke her consent for Dish or its affiliates to contact the consumer.  *Id.* at *11.

In *Patterson*, the consumer signed a financing application containing a provision permitting the car dealer (or any other assignee) to make telemarketing calls.  2018 WL 647438, at *1.  The consumer also simultaneously signed a retail installment contract requiring any changes

---

[9]  Additionally, the Second Circuit did not find the "consent" term under the TCPA to be ambiguous.  *Id.* at 58.  Consequently, it declined to apply the remedial rule of statutory interpretation, which would have required the court to liberally read the statute to further Congress' purpose.  *Id.*  Rather, the Second Circuit determined it was "well-established" that consent could become irrevocable in a binding contract at the time Congress enacted the TCPA.  And there was "no indication in the statute's text that Congress intended to deviate from this common law principle."  *Id.*

[10]  *See, e.g., Medley v. Dish Network, LLC*, No. 16-2534, 2018 WL 4092120, at *9-10 (M.D. Fla. Aug. 27, 2018); *Patterson v. Ally Fin., Inc.*, 2018 WL 647438, at *4-5 (M.D. Fla. Jan. 21, 2018); *Target Nat'l Bank v. Welch*, No. 15-61436, 2016 WL 1157043, at *4-5 (M.D. Fla. Mar. 24, 2016).

to the contract to be made by the dealer and in writing.  *Id.*  After the consumer fell behind on payments, representatives of the assignee began contacting the consumer to collect the debt owed. *Id.*  The court determined the consumer's prior consent did not include communications to satisfy delinquent obligations—the consumer only consented to *telemarketing* calls.  *Id.* at 5. Consequently, the court found the calls made to the consumer were outside the scope of the contract.  And because the TCPA otherwise permits oral revocation, the court found the consumer could orally revoke his consent to be contacted, despite providing his telephone number on an application and the contract prohibiting oral changes.  *Id.*; *see also Target Nat'l Bank*, 2016 WL 1157043 at *1 (finding the consumer's consent was revocable because the credit card application did not include a provision precluding revocation).

Here, it is undisputed that Plaintiff is an *Arthur* class member who received notice of the *Arthur* Settlement and the procedure to timely submit a Revocation Request.  The parties agree that the failure to submit a Revocation Request provided Sallie Mae with express consent to contact Plaintiff by means otherwise prohibited by the TCPA.  It is also undisputed that the Revocation Request was a form of consideration for the *Arthur* Settlement.  Because this case involves consent given as part of a bargained-for exchange, it falls outside the applicability of the 2015 FCC Ruling.

Plaintiff argues that the Revocation Request has no bearing on *future* revocations. Specifically, Plaintiff claims the *Arthur* Settlement did not address the issue of future revocation nor did the *Arthur* Settlement make the "deemed consent" irrevocable.  The Court disagrees.  The *Arthur* Settlement specifically stipulates that if a class member "failed or fails to fully and accurately complete a Revocation Form, . . . the request for a revocation will be invalid."  *Arthur* Settlement at 11.  Therefore, the *Arthur* Settlement sufficiently accounted for future revocations and in fact, explicitly invalidated untimely Revocation Requests.

Because the *Arthur* Settlement places contractual restrictions on revocation, Plaintiff's reliance on *Osorio* is erroneous.  In *Osorio*, the court determined that consumers were "free to orally revoke any consent previously given" only "in the absence of any contractual restriction to the contrary."  Here, the Court has determined that the *Arthur* Settlement specifically restricted a class member's ability to unilaterally revoke their prior express consent.  Therefore, the Eleventh Circuit's decision in *Osorio* is inapplicable.

Plaintiff's situation is most analogous to the consumer in *Medley* as opposed to *Patterson*. As the consumer in *Medley*, Plaintiff gave his express consent as part of a bargained-for exchange when it failed to either opt out of the *Arthur* Settlement or timely submit a Revocation Request. Unlike the telemarketing calls in *Patterson*, Plaintiff specifically consented to receive autodialed and prerecorded calls to his cellular telephone from Defendants.  And unlike the credit application in *Target Nat'l Bank*, the *Arthur* Settlement specifically invalidated any requests for revocation not properly made by a valid and timely Revocation Request.

The Court is also persuaded by the *Reyes* decision and the *Rodriguez* decision.  Under common law, Plaintiff's consent was irrevocable, and any attempt to revoke his prior consent was ineffective because the consent given was consideration for the *Arthur* Settlement.  Therefore, Plaintiff answering "no" to the Navient representative was an ineffective attempt to revoke his prior express consent.  Consequently, Defendants did not violate the TCPA as a matter of law when they contacted Plaintiff using autodialed and prerecorded calls.

### B.  Reconsent

Nonetheless, even if Plaintiff effectively revoked his prior express consent, Plaintiff *reconsented* when he submitted the demographics page, which included a consent provision. Plaintiff argues his submission of the demographics page did not trigger the consent provision because he did not *provide* his telephone number—it was auto-populated.  Plaintiff also claims the

direction to submit the demographics page if no changes were needed was misleading and confusing because it did not direct the reader to the consent language or indicate that by clicking submit the reader also consented to autodialed and prerecorded calls.

It is undisputed that Plaintiff submitted the demographics page *after* telling the Navient representative he did not wish to receive autodialed or prerecorded calls.  The parties agree that Plaintiff saw his telephone number on the contact information form.  It is also clear from the Website Screenshot that Plaintiff's cellular telephone number was not a required field, and therefore, Plaintiff could have removed it *before* submitting the demographics page.

There is no dispute that Plaintiff saw the consent language on the demographics page before submitting it to Navient.  Moreover, the consent provision is not ambiguous.  It unequivocally states that Sallie Mae (and Navient specifically) may contact the Plaintiff using automated dialing devices and prerecorded messages.

Because Plaintiff did not delete his telephone number before submitting his demographic page and Plaintiff saw the unambiguous consent provision, Plaintiff reconsented to Defendants contacting him using autodialed and prerecorded phone calls.  Therefore, this Court affirms and adopts Magistrate Judge McAliley's finding that Defendants did not violate the TCPA as a matter of law, even if Plaintiff effectively orally revoked his consent during his communication with the Navient representative.

## CONCLUSION

Because Plaintiff is an *Arthur* class member who failed to opt of the *Arthur* Settlement and failed to timely submit a Revocation Request, Plaintiff cannot unilaterally revoke his prior express consent given as consideration for the *Arthur* Settlement.  And even if Plaintiff could revoke his consent, Plaintiff reconsented when he submitted his demographics page with an unambiguous consent provision and his phone number.  Because at all times Defendants had Plaintiff's prior

express written consent, the Court finds that the Defendants did not violate the TCPA as a matter of law.  Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Report [ECF No. 73] is hereby **AFFIRMED AND ADOPTED**.

2. Defendants' Motion for Summary Judgment [ECF No. 21] is **GRANTED**.

3. Plaintiff's Motion for Summary Judgment [ECF No. 24] is **DENIED**.

4. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 7th day of August, 2019.

_____
**RODOLFO RUIZ**
**UNITED STATES DISTRICT JUDGE**
